UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LESLEY ESCHETE, individually and**                           **CIVIL ACTION**
**on behalf of her minor child,**
**CAROLINE ESCHETE,**

**VERSUS**                                                    **NO. 06-2835**

**A. KENNISON ROY, III, M.D., RIVER**                        **SECTION " T" (3)**
**OAKS HOSPITAL, and ELI LILLY & COMPANY**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant Eli Lilly and Company's Motion for Summary Judgment (Rec.

Doc. 32). After considering the arguments of the parties, the law, and applicable jurisprudence, the

Court rules as set forth herein.

**I.      BACKGROUND**

Justin Eschete ("Eschete") committed suicide on January 9, 2005. His wife, Lesley Eschete

("Mrs. Eschete"), individually and on behalf of the couple's daughter, Caroline Eschete,

(collectively, "Plaintiffs") have filed suit against Eli Lilly & Company ("ELC") alleging that ELC's

drug, Cymbalta, was taken by Eschete prior to his death and caused his suicide. Plaintiffs allege the

drug was unreasonably dangerous pursuant to the Louisiana Products Liability Act ("LPLA"), La.

Rev. Stat. §§ 9:2800.51, *et seq.*, because ELC failed to adequately warn of an alleged link between

Cymbalta and suicide and because Cymbalta was defectively designed.

On November 4, 2004, Eschete checked into the River Oaks Hospital ("River Oaks") for a

five-day in-patient treatment program, after he was discovered diverting Demerol from a hospital where he worked as a nurse.  At the time of check-in, Eschete was tested for suicidal tendencies and suicidal risk; the results were negative.  Immediately upon check-in, Dr. Kennison Roy ("Dr. Roy") began treating Eschete.  After performing an initial assessment and diagnosing Eschete with depression, Dr. Roy prescribed Cymbalta to Eschete on November 4, 2004.  During his five day stay at River Oaks, Eschete took Cymbalta.

Eschete was discharged from River Oaks on November 9, 2004, and was given a thirty-day Cymbalta prescription, which he filled at Walgreens.  On November 30, 2004, Eschete entered the Red River Treatment Center ("Red River") and began a twenty-one day treatment program.  The medication log from Red River indicates that from November 30, 2004 to December 21, 2004,the date Eschete was discharged, Eschete took Cymbalta every night at bedtime.  On January 9, 2005, approximately nineteen days after his discharge from Red River, Eschete committed suicide by hanging himself.

ELC filed the instant Motion arguing that summary judgment should be granted on two grounds.  First, ELC argues that Plaintiffs have no evidence demonstrating that at the time of his death, Eschete was taking Cymbalta and, therefore, they cannot prove causation as a matter of law.  Second, ELC argues Plaintiffs cannot meet their burden on the inadequate warning theory under the LPLA.  Plaintiffs counter that summary judgment should be denied because there are genuine issues of fact precluding judgment at this time.

## II.    LAW AND ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law ." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence

3

of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

### A.   Causation

ELC argues that in order to prevail on causation, Plaintiffs must prove that Eschete was taking Cymbalta at the time of his death.  ELC submits that Plaintiffs cannot meet this burden because (1) no witness has testified, based upon personal knowledge, that Eschete was taking the drug at the time of his suicide; (2) Mrs. Eschete testified that she did not see Eschete take Cymbalta

after his discharge from the Red River facility; (3) Mrs. Eschete testified that she saw Eschete take Cymbalta on only one occasion and that was after his November 9, 2008 discharge from River Oaks and prior to his admission to Red River; and (4) the post-mortem toxicology analysis performed on decedent's blood was "negative" for antidepressants.

ELC also submits that the negative report is corroborated by additional undisputed facts showing Eschete was not taking the medication at the time of his death based upon the prescription records and the number of pills remaining in the Cymbalta bottle at the time of Eschete's death. ELC's position is that shortly after Eschete's death, his Cymbalta bottle was examined and it was determined that fourteen of the thirty-day supply of pills remained. Eschete obtained a thirty-day Cymbalta supply twice, one on November 11, 2004, and again on December 9, 2004. Thus, under ELC's theory, if Eschete was taking the medication, he should have had only one pill remaining and not fourteen at the time of his death.

In opposition, Plaintiffs argue that Eschete never gave any hint of committing or attempting suicide prior to taking Cymbalta, despite his being exposed to various stressors and suffering from depression. They also point out that Eschete was evaluated for suicidal risks before being admitted to River Oaks and was found not to have suicidal tendencies. Plaintiffs assert that the pills remaining in Eschete's bottle at the time of his death demonstrate he was taking Cymbalta regularly. Plaintiffs assert that when Eschete was discharged from River Oaks on November 9, 2004, he was given a prescription for a thirty-day supply of Cymbalta, which he filled on November 12, 2004. Plaintiffs claim that when Eschete entered Red River on November 30, 2004, he checked in with his remaining supply of Cymbalta. While Mrs. Eschete refilled Eschete's Cymbalta prescription on December 9, 2004, she claims that she did not bring the prescription to him until her only visit to

Red River on December 21, 2004.  Plaintiffs, instead, argue that Eschete was supplied medication (other than his own supply) by Red River from December 12, 2004 through December 21, 2004 as the November 12, 2004 prescription would have run out on December 12, 2004.  This would have left Eschete with no Cymbalta for the remainder of the twenty-one day stay.  Thus, Plaintiffs assert that on the date of Eschete's death, he would have only the supply of pills remaining from December 21, 2004 through January 9, 2005 ( approximately eighteen pills).  Mrs. Eschete claimed that it was her understanding that Eschete was continuing to take Cymbalta until the time of his death because he never told her otherwise.  (Exhibit 4 to Rec. Doc. 48, pp. 245-50).  According to Plaintiffs, additional evidence of Eschete's ingesting Cymbalta is demonstrated through testimony regarding his behavior between the initial prescription date and the date of his death.  Plaintiffs explain that the published information on the drug provides that mania and impulsivity are symptoms associated with taking Cymbalta (Exhibit 2 to Rec. Doc. 48) and that Eschete was "awkwardly giddy" towards Mrs. Eschete the night before his suicide.  ((Exhibit 4 to Rec. Doc. 48, p. 8).

Finally, Plaintiffs assert the toxicology report cannot be relied upon because the drug has a twelve hour half-life with the maximum concentrations occurring six hours post dose.  Because Eschete apparently took his medications at night, Plaintiffs contend that the medication would have been out of his blood stream by the next morning and, therefore, would not have been present when the toxicology report was performed.

After reviewing the arguments and the documents attached in support, the Court finds that a genuine issue of material fact remains regarding whether Eschete was taking Cymbalta at the time of his death.  The Walgreens records indicate that Eschete's Cymbalta prescription was refilled on November 12, 2004 and December 9, 2004.  The first thirty-day prescription would not have been

6

exhausted at the time Eschete entered Red River on November 30, 2004, as he would have had approximately eleven pills remaining upon check in or by December 11, 2004.  It is undisputed that the prescription was re-filled on December 9, 2004 and it is also undisputed that the records from the treatment center indicate that Plaintiff was given 60mg of Cymbalta daily from November 30, 2004 through December 20, 2004.

ELC's reply submits that Red River did not have Eschete's medication available, and therefore offered to give him a comparable substitute or allow Eschete to have the prescription filled at another pharmacy.   As there is no evidence that Eschete was in fact given a comparable substitute, ELC argues that the only conclusion which can be drawn is that Eschete was getting his medication from his own supply. In order for the Court to follow ELC's facts, it would have to assume that the December 9, 2004 prescription was provided to Eschete before or on the date that his first prescription was depleted.  However, Mrs. Eschete's uncontradicted deposition testimony indicates that she picked up the refilled Cymbalta prescription on December 9, 2004, but did not give it to Eschete until December 21, 2004, the only date she was allowed to visit Red River.  ( Exhibit 4 to Rec. Doc. 48, pp. 26, 253).

If ELC's recitation of the facts is accepted, when Eschete was discharged from Red River, he would have the remainder of his December 9, 2008 prescription, which, at the time of his death, should have been close to empty and not the fourteen or so pills found in the bottle.  On the other hand, if Plaintiffs' recitation of the facts is believed, Eschete would have begun taking his second prescription on or about December 21, 2008, and therefore, he would not have taken the entire bottle at the time of his death.

Plaintiffs have presented no direct evidence indicating that Eschete ingested Cymbalta prior

to his death.   However, there is circumstantial evidence which could be found to support either party's claims.   Because these issues are heavily factual and require that the fact finder review all the evidence and make credibility determinations as to which contention is correct, the Court denies summary judgment on the issue of whether Eschete was taking Cymbalta at the time of his death.

### B.      Inadequate Warning

The LPLA establishes the exclusive theories of liability for manufacturers for damages caused by their products.  La. Rev. Stat. § 9:2800.52; *Lewis v. Intermedics Intraocular, Inc.,* 56 F.3d 703, 706 (5th Cir. 1995)*; Brown v. R.J. Reynolds Tobacco Co.,* 52 F.3d 524, 526 (5th Cir. 1995).  A manufacturer can be held liable for damage proximately caused by the characteristic of the product that renders it unreasonably dangerous.  A product is unreasonably dangerous if and only if:

> (1)  the product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800. 55;
>
> (2) the product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3)  the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4)  the product is unreasonably dangerous because it does not conform to an expressed warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La. Rev. Stat. § 9:2800.54.  In the prescription drug products liability context, Louisiana applies the "learned intermediary doctrine" to inadequate warning claims.  *Stahl v. Novartis Pharmaceuticals Corp*., 283 F.3d 254, 265 (5th Cir. 2002).  This doctrine discharges a drug manufacturer's "duty to consumers by reasonably informing prescribing physicians of the dangers of harm from a drug." *Stahl,* 283 F. 3d at 265.  A two-prong test is employed in which the plaintiff must show: (1) that the

defendant failed to warn (or inadequately warned) the physician of a risk associate with the product that was not otherwise known to the physician and (2) that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Stahl,* 283 F. 3d at 265-266. In order to demonstrate causation, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Ferguson v. Proctor & Gamble Pharmaceuticals, Inc.*, 353 F. Supp. 2d 674, 679 (E.D. La. 2004)(Lemmon, J) *quoting Willett  v. Baxter Int'l, Inc*., 929 F. 2d 1094, 1099 (5ᵗʰ Cir. 1991).

ELC seeks summary judgment on Plaintiffs' claims that Cymbalta was unreasonably dangerous because the warning was inadequate.  ELC argues that Plaintiffs cannot meet the burden of proving that the manufacturer failed to warn the physician of the risk and that the failure to warn was both a cause in fact and the proximate cause of the injury because there is not any affirmative proof as to the causation prong of this test.

Plaintiffs counter that the learned intermediary theory is inapplicable to the facts of this case because the Food and Drug Administration ("FDA") specifically required direct warnings be made to patients, their families and/or caregivers as to Cymbalta's suicidal tendencies, and there is no evidence these warnings were given as required.  Alternatively, Plaintiffs argue that the information provided by ELC to physicians was deficient because it did not specifically list suicide or attempted suicide as a side effect.  In further alternative, Plaintiffs argue that discovery is not complete and thus, the motion should be denied and/or continued until the completion of discovery.

Turning to the substantive question of inadequacy of the warning under the LPLA, the Court notes that the Fifth Circuit has recently addressed this very issue in *Ackermann v. Wyeth*

9

*Pharmaceuticals,* 2008 WL 1821379 (5th Cir. April 24, 2008).  In *Ackermann*, the district court had applied the learned intermediary doctrine to grant summary judgment against Ackermann's claim that a drug's warning label was inadequate with respect to the risk of suicidal behavior. The Fifth Circuit affirmed that decision, finding that even if there was an issue of fact concerning the accuracy of the label, the decedent's psychiatrist testified unequivocally that he would have prescribed the drug even if the warning had been stronger.

In the instant case, Dr. Roy testified that even if a different warning had been supplied, he would not have changed his decision to prescribed the drug.  ( Exhibit 9 to Rec. Doc. 32).  Dr. Roy further testified that even the warning section on the current package insert of Cymbalta, which was not in place in 2004, would not have persuaded him to not to prescribe Cymbalta to Eschete. (*Id.*) This attestation by Dr. Roy defeats Plaintiffs' inadequate warning products liability claim, pursuant to the Fifth Circuit's *Ackermann* decision.

Finally, the Court notes that, contrary to Plaintiffs' representations that ELC omitted suicide information from its clinical studies in its labeling, Cymbalta's package insert for November 2004 includes a section entitled "Other Adverse Events Observed During the Premarketing Evaluation of Duloxetine," which states: "Psychiatric Disorders...Infrequent: completed suicide, mania, mood swings, pressure of speech, sluggishness, and suicide attempt." (Exhibit 16 to Rec. Doc. 32).  Thus, Plaintiffs assertion that ELC omitted suicide information from its clinical studies label is without merit.  Accordingly, the Court finds that ELC is entitled to summary judgment on Eschete's inadequate warning claim.

**III.     CONCLUSION**

Considering the foregoing, **IT IS ORDERED** that **Defendant Eli Lilly and Company's Motion for Summary Judgment (Rec. Doc. 32)** is **DENIED IN PART** and **GRANTED IN PART**.

New Orleans, Louisiana this 29th day of April, 2008.

**KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE**